MERCER COUNTY.

JANUARY TERM, 1882. No. 366.          NOVEMBER 27, 1882.

## Buhl *et al. v.* Thompson.

1. A coal lease provided that the lessee should enter and search for coal, and should pay to the lessor, *inter alia,* "$2,000 each year after the expiration of the said eighteen months during the continuance of this indenture," and the lessee or "his assigns shall have the right to abandon said lands and mining and remove all buildings and fixtures." It further provided that the lessee should "pay the first party, her legal representatives or assigns, the sum of thirty cents for each ton (2,240 pounds) of merchantable coal mined and removed," and that the payments, "$2,000 as aforesaid, when made, are to apply to the rent of coal first mined thereafter, and such yearly payments cease whenever the second party or his assigns abandons this agreement." *Held* that the lessees must pay the annual payments up to the time of abandonment, and that the fact that they had made payments exceeding the amount of royalty to which the lessor would be entitled if all the coal in the land had been actually mined, was no defense..
2. The assignees of the lessee are bound by the covenant to make the annual payments.

Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT, and GREEN.

Error to the Court of Common Pleas of *Mercer County.*

Debt by Mary J. Thompson, guardian of John and William Semple, minors, against C. H. Buhl, James Westerman, C. H. Andrews, and W. J. Hitchcock, doing business as Buhl, Westerman & Co., assignees of R. M. Ulp, to recover upon a lease.

At the trial before McDERMITT, P. J., the following facts appeared: On January 27, 1869, the plaintiff sold and conveyed to R. M. Ulp, his heirs and assigns, all the coal under a certain tract of land containing about a hundred acres in Hickory township, Mercer county, Pennsylvania, "granting to the party of the second part, (Ulp,) his heirs and assigns, as well as their laborers and workmen, the right to enter upon said land at any time hereafter and search for coal, together with all rights and privileges incident to the mining, securing, and removing said coal, including the right of ingress and egress, and to dig, mine, explore, and occupy (with such constructions and buildings as may be necessary and useful for the full enjoyment of said coal) not more than three acres of land. *    *    *    *    *    * The party of the second part, by himself, his assigns, and workmen at such

time as he may choose, within six months, agree to make search for said coal ; and if he find coal of sufficient thickness, quantity, and quality to justify opening and working, then he, or his representatives or assigns shall pay unto the said first party, her representatives, or assigns the sum of five hundred dollars, ($500,) one thousand dollars ($1,000) at the expiration of eighteen months from the above date, being the 27th day of January, 1869, and two thousand dollars ($2,000) each year after the expiration of said eighteen months during the continuance of this indenture ; and the failure to make search within the said time, and the failure to make such yearly payments within ten days made upon the second party or his assigns, shall be an abandonment of this grant, and the second party or his assigns shall have a right to abandon said lands and mining and remove all buildings and fixtures.   The mining of coal by the said party or his assigns shall be a sufficient compliance by him with his covenants.   The second party, by himself or his assigns, agrees to pay the first party, her legal representatives, or assigns, the sum of thirty cents for each ton (2,240 pounds) of merchantable coal mined and removed from said land herein described. The payment of rent per ton, as aforesaid, shall be made half yearly, and all payments in this indenture shall. be made and accepted in bankable funds of the State of Pennsylvania.   It is understood and agreed that the payments of $500, $1,000, and $2,000, as aforesaid, when made, are to apply on the rent of coal first mined thereafter, and such yearly payments cease whenever the second party or his assigns abandons this agreement."   The party of the second part was to mine seven thousand tons each year.

On August 2, 1869, Ulp assigned all his interest in the above lease to the defendants.   Six months after the execution of the lease, the company defendant paid to the plaintiff $500, eighteen months after the execution of the lease they paid $1,000, and thereafter $2,000 each year until 1878.   No coal was mined until July, 1878.   November 13, 1879, this suit was brought to recover the balance of the annual payments then due.

The defendants gave evidence to the following effect :

They abandoned the mine about October 28, 1881.   Up to this time, the amount of coal taken out was forty-six thousand tons forty pounds.   The royalty upon this, at thirty cents a ton, was $13,802 72.   They had advanced to plaintiff $17,000.   All the coal was taken out that was minable.   It was bad and thin.

[Buhl *et al. v.* Thompson.]

The Court charged the jury, *inter alia,* as follows :

"Although, perhaps, not at all material to this case, we are of the opinion that the half-yearly payments referred to only apply to the coal mined, the royalty upon which would exceed the above sums mentioned as payable at such stated periods. Thus, for instance, if in the first six months of any given year the royalty on the coal mined exceeded $1,000, such excess was payable at the end of said six months.

Their contract also provided that said yearly payments should cease whenever the second party abandons this agreement.

On the 2d day of August, 1869, the said Ulp assigned all his interest in the above indenture to James Westerman and others, and the plaintiff has brought this suit against the defendants in this case, as the assignees of said Ulp. That the defendants are the assignees of said Ulp is admitted by them.

[Whatever liabilities were imposed upon Ulp by the agreement between him and the plaintiff in this case are now devolved upon the defendants as his assignees, and they are personally liable to this suit.]

Ulp, under whom the defendants claim, was the sole judge of whether he found coal in sufficient thickness, quality, and quantity to justify mining it, and whether he did or not, he could have abandoned the agreement at any time, and thus absolved himself from any liability upon such subsequent stated payments. So his assignees, the defendants, could at any time, even without the consent of the plaintiff, have absolved themselves from all future liability on such future payments by abandoning the agreement. If, however, they saw fit not to abandon the agreement, but remained in possession of the premises down to the bringing of this suit, they are liable to the payment of all such stated payments, with interest thereon from the time they severally fell due, after deducting therefrom the amount which has been shown to have been paid by them to apply thereon.

We have been requested to answer some points. The plaintiff requests us to charge you :

" That under the law and the evidence in this case the plaintiff is entitled to recover the balance due on the $500 due six months from the date of the article, $1,000 due eighteen months from the date of the article, and $2,000 annually thereafter, up until the date of bringing this suit, after deducting the payments made by the defendant to the plaintiff."

[Buhl *et al. v.* Thompson.]

We answer that point in the affirmative, as explained in the general charge.

The defendants request us to instruct you :

"*First.* That if the jury find from the evidence that the defendants have mined all the coal which was in the land described in the article of agreement upon which this suit was brought, at the time of its execution, and which in quality and quantity would justify opening and mining, and that they have made payments to the plaintiff in the aggregate equal to the royalty on such coal, then their verdict must be for the defendants."

Refused, as explained in the general charge.

"*Second.* That if the jury find from the evidence that the defendants have made payments to the plaintiff in all equal to or exceeding the amount of royalty to which the plaintiff would be entitled under the article sued on, and if all the coal in the land, which in quantity and quality would justify opening and mining, had been actually mined, then their verdict must be for the defendants."

Refused, as explained in the general charge.

"*Third.* That if the jury find from the evidence that the defendants found a body of coal in the land described in the article of agreement, such a one which in quantity and quality would justify opening and mining, and that they opened it and mined out and paid to the plaintiff the royalty on all of such coal which could, in due and proper course of mining, be reached from openings so made, then, in order to recover in this action, the plaintiff must show by the weight of the evidence that there is other coal in said land which in quantity and quality would justify opening and mining."

That point is answered also in the negative, as explained in the general charge.

"*Fourth.* If the jury are satisfied from the weight of the evidence that there was not coal of sufficient quantity, quality, and thickness to justify opening and mining, the plaintiff cannot recover."

We answer that point also in the negative.

Then, gentlemen of the jury, [if you find that these defendants entered into the possession of these premises as the assignees of Ulp, and were in possession of the premises at the time this suit was brought, your verdict will be in favor of the plaintiff for all of those stated payments of royalty which you find due after allowing the defendants a credit for all they have shown themselves to have paid on the article."]

[Buhl *et al.* *v.* Thompson.]

February 15, 1882, verdict for the plaintiff for $3,088 18, and judgment thereon.

The defendants thereupon took this writ, assigning for error the affirmance of the plaintiff's point, the answers to defendants' points, and the portions of the charge bracketed.

*J. G. Elliott* and *Thomas Tanner* for plaintiffs in error.

By the agreement, the defendant in error sold and conveyed to Ulp the fee simple in all the merchantable coal on its lands described: Funk *v.* Haldeman, 3 Smith, 244; Grove *v.* Hodges, 5 Smith, 504; Stoughton's appeal, 7 Nor., 198. The several sums provided for in the agreement are not rents but "purchase sums." Bainbridge, 247.

Having paid for all the coal in the land, the defendants had complied with all their covenants.

The covenant to pay $2,000 annually was personal to Ulp, and did not bind the assignees: Beach *v.* Morris, 12 S. & R., 16.

*J. G. White* and *Q. A. Gordon* for defendant in error, cited Tod *v.* Stambaugh, 37 O., 469; Kemble Coal and Iron Company *v.* Scott, 9 Nor., 343; Bute *v.* Thompson, Jacob's Fisher's Digest, 9063; Johnston *v.* Cowan, 9 Smith, 275.

The yearly payments are the rent reserved in the lease: Herbaugh *v.* Zentmyer, 2 Rawle, 159; Borland's Appeal, 16 P. F. Smith, 473.

The agreement is similar to a ground-rent deed, reserving yearly sums to be paid to the grantor. In such a case, the covenant to pay these yearly sums runs with the land, and is binding upon the alienee of the grantee: Royer *v.* Ake, 3 Penna., 461; Streaper *v.* Fisher, 1 Rawle, 161; Springer *v.* Phillips, 21 P. F. Smith, 60.

DECEMBER 11, 1882.—PER CURIAM: The terms of the agreement of January 27, 1869, were clear, and the construction put upon it by the learned judge was perfectly right. The annual payments of $2,000 each year after the expiration of the first eighteen months were to be "during the continuance of this indenture," and "such yearly payments cease whenever the second party or his assigns abandons this agreement." "The second party or his assigns shall have a right to abandon said lands and mining, and remove all buildings and fixtures." The payments, when made, are to apply on the rent of coal

first mined thereafter. It is no answer to say that the defendants had made payments equal to or exceeding the amount of royalty to which the plaintiff would be entitled if all the coal in the land had been actually mined. The defendants had the remedy in their own hands by abandoning the mine and removing their fixtures and buildings.

Judgment affirmed.